**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Transcontinental Gas Pipe Line Corporation, et al., Intervenors.**

**No. 01-1345.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 8, 2002.

Decided Jan. 17, 2003.

Steven J. Kalish argued the cause for petitioners. With him on the briefs were Denise C. Goulet and Irwin Popowsky.

Timm Abendroth, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were Cynthia A. Marlette, General Counsel, and Dennis Lane, Solicitor.

Michael J. Thompson, Jeffrey G. DiSciullo, David A. Glenn, Richard P. Bonnifield, Kenneth R. Carretta, Frederick W. Peters, and Charles H. Shoneman were on the brief for intervenors Transcontinental Gas Pipe Line Corporation, et al. Gregory Grady entered an appearance.

Before: GINSBURG, Chief Judge, and EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Petitioners Consolidated Edison ("ConEd") and other pipeline customers of Transcontinental Gas Pipeline Corporation ("Transco") ask this court to vacate three Orders issued by the Federal Energy Regulatory Commission ("FERC" or the "Commission"), involving Transco's proposed rate change for several of its expansion projects. Petitioners contend that the policy standards used by FERC to evaluate Transco's proposal violate the Administrative Procedure Act ("APA").

Reversing a decision by an administrative law judge ("ALJ"), FERC approved Transco's proposal to shift from "incremental" pricing to "rolled-in" rates based on standards enunciated in a 1995 Policy Statement. *Transcon. Gas Pipe Line Corp.*, 87 F.E.R.C. ¶ 61,087, 1999 WL 219884 (Apr. 16, 1999) (*"Transco I"*), *reprinted in* Joint Appendix ("J.A.") 181-98. After petitioners filed requests for rehearing on this matter, FERC issued a new 1999 Policy Statement for future rate change proposals. However, in addressing the petition for rehearing, the Commission again evaluated Transco's proposal pursuant to the 1995 Policy Statement and ultimately upheld its initial ruling to approve the rate change. *Transcon. Gas Pipeline Corp.*, 94 F.E.R.C. ¶ 61,362, 2001 WL 306495 (Mar. 28, 2001) (*"Transco II"*), *reprinted in* J.A. 199-215. Subsequently, in response to a second petition for rehearing, FERC rejected objections to its reliance on the 1995 Policy Statement. Order Denying Rehearing, *Transcon. Gas Pipe Line Corp.*, 95 F.E.R.C. ¶ 61,388, 2001 WL

672563 (June 13, 2001) ("*Transco III*"), *reprinted in* J.A. 232-36.

Petitioners argue that the disputed Orders are unreasonable, because they rely upon the 1995 Policy Statement rather than the 1999 Policy Statement. Petitioners contend that FERC was obliged to apply the more recent policy statement, because it was issued while the Transco case was still pending. We disagree.

The application of a newly adopted policy statement to a pending case is not presumed unless the policy change has the "force of law." When an agency issues a policy statement that is not binding and merely signals how the agency may handle future cases, there is no legal principle that mandates retroactive application of the new policy statement to pending cases. Retroactive application to pending cases may be permissible, but it is not required. An agency may decide to apply a pre-existing policy to resolve a pending case, so long as that policy is not otherwise arbitrary and the agency provides a reasoned explanation for its decision.

On the record before us, we hold that FERC did not act unlawfully in applying its 1995 Policy Statement when it resolved Transco's proposal to implement rolled-in rates. We further hold that the 1995 Policy Statement is not unreasonable, either facially or as applied in this case. Finally, we hold that FERC sufficiently explained its reasons for relying on the 1995 Policy Statement (rather than the 1999 Policy Statement) to evaluate the rate change proposal. We reject petitioners' arguments to the contrary. Accordingly, we deny the petition for review.

## I. BACKGROUND

### A. REGULATORY FRAMEWORK

Under the Natural Gas Act ("NGA"), FERC has jurisdiction to approve the construction of natural gas pipeline facilities and to regulate the transportation of natural gas in interstate commerce. 15 U.S.C. § 717, *et seq.* (2000). Any pipeline seeking to build or to expand its facilities must first apply for a certificate of public convenience and necessity from FERC. After notice and hearing, FERC may authorize or "certificate" any pipeline project that the agency determines is "necessary or desirable in the public interest." *Id.* § 717f.

The NGA requires that all rates and charges by pipelines must be "just and reasonable." *Id.* § 717c(a). Rate cases before FERC are reviewed under either section 4 or section 5 of the NGA:

> [T]his court has strictly policed the statutory line that separates action taken under NGA section 4 from that taken under NGA section 5. In *Algonquin,* we described this distinction as follows:
>
> > [T]he Commission may act under two different sections of the Natural Gas Act (NGA or the Act) to effect a change in a gas company's rates. When the Commission reviews rate increases that a gas company has proposed, it is subject to the requirements of section 4(e) of the Act. Under section 4(e), the gas company bears the burden of proving that its proposed rates are reasonable. On the other hand, when the Commission seeks to impose its own rate determinations, rather than accepting or rejecting a change proposed by the gas company, it must do so in compliance with section 5(a) of the NGA.
>
> Under section 5, the Commission must first establish that the proposed or existing rate is unjust and unreasonable. It is only after this antecedent showing has been made that the Commission properly can illustrate that its alternative rate proposal is both just and reasonable.

*"Complex" Consol. Edison Co. v. FERC,* 165 F.3d 992, 1001 (D.C.Cir.1999) (quoting

*Algonquin Gas Transmission Co. v. FERC,* 948 F.2d 1305, 1311 (D.C.Cir.1991)) (citations·omitted).

Generally, a pipeline can allocate the costs associated with new or expanded facilities in one of two ways. The pipeline may "roll in" these costs, by distributing additional charges among all customers of the pipeline system. This pricing approach recognizes that the pipeline is "not just a collection of discrete pieces and parts, but an integrated system serving all of its customers." *Battle Creek Gas Co. v. Fed. Power Comm'n,* 281 F.2d 42, 46 (D.C.Cir.1960). The alternative to rolled-in rates is "incremental" pricing:

> Whatever its virtues, use of a "rolled-in" approach alone is not adequate in all situations, particularly where some assets are used by the utility solely for the benefit of one customer. At some point in every gas distribution facility the general system ends and connective links to the local distributors' own equipment begins. At this point the facility becomes so identified with its function as a part of the local distributor's gas plant that it may be unfair to charge its costs to all of the customers of the utility. This is particularly so where the extent and cost of such segregated facilities vary greatly among the customers. In such a situation the costs of these facilities are commonly charged as an "incremental" cost added in to the particular customer's rate base. Whether the cost of a particular facility is more properly treated as a systemic cost and rolled-in to the rate base of all of the customers, or as a segregated cost to a particular customer, which should be treated on an incremental basis, is frequently a difficult issue of fact presented to the Commission.

*Id.* at 46–47 (footnote omitted).

Over time, FERC policy has moved away from routinely encouraging rolled-in rates toward a preference for rate proposals that rely upon incremental pricing. *See TransCanada PipeLines Ltd. v. FERC,* 24 F.3d 305, 308 (D.C.Cir.1994). Responding to this court's directives to justify its evolving standard for evaluating rate allocation proposals, FERC adopted a Policy Statement discussing its revised approach. *Pricing Policy for New and Existing Facilities Constructed By Interstate Natural Gas Pipelines,* 71 F.E.R.C. ¶ 61,241, 1995 WL 325883 (1995), *reh'g denied,* 75 F.E.R.C. ¶ 61,105, 1996 WL 208849 (1996) ("*1995 Statement*"). The Commission's goals were to give the industry clear signals about which pricing approach would govern an expansion project and to avoid imposing "rate shock" on existing pipeline customers. *1995 Statement,* 71 F.E.R.C. at 61,915.

FERC described two essential features of the 1995 Policy Statement:

> First, the Commission will make a determination of an appropriate rate design in a pipeline's certificate proceeding. Second, when the pipeline seeks rolled–in pricing, the Commission will base its pricing decision on an evaluation of the system-wide benefits of the project and the rate impact on existing customers. To reduce uncertainty, in those cases, the Commission will establish a presumption for rolled–in rates when the rate effect on existing customers is not substantial.

*Id.* The Commission indicated that a rolled-in rate proposal was presumptively valid if the rate impact on existing customers was 5% or less and the pipeline company also offered evidence of general system-wide benefits. *Id.* at 61,916-17.

After 1995, as competition in the pipeline industry increased, FERC decided to develop a new policy that de-emphasized rolled-in rates. *Certification of New Interstate Natural Gas Pipeline Facilities,* 88 F.E.R.C. ¶ 61,227, 1999 WL 718975

(1999), *clarified,* 90 F.E.R.C. ¶ 61,128, 2000 WL 146839, *further clarified,* 94 F.E.R.C. ¶ 61,094, 2001 WL 275437 (2000) (*"1999 Statement"*). In issuing the new policy, FERC sought to "strike the proper balance between the enhancement of competitive alternatives and the possibility of over building." *1999 Statement,* 88 F.E.R.C. at 61,737. The *1999 Statement* indicated that FERC would not approve rolled-in rates unless the pipeline could show that the benefits of construction outweighed the adverse economic effects on existing pipeline customers:

> If residual adverse effects on [existing pipeline customers, other pipelines in the market and their captive customers, or the economic interest of adjacent landowners and communities] are identified, after efforts have been made to minimize them, then the Commission will proceed to evaluate the project by balancing the evidence of public benefits to be achieved against the residual adverse effects. This is essentially an economic test.

*Id.* at 61,745. FERC emphasized that its "economic test" for rate proposals would apply prospectively: "[T]he new policy will not be applied retroactively to cases where the certificate has already issued and the investment decisions have been made." *Id.* at 61,750.

## B. Procedural Background

Transco operates a natural gas pipeline that connects production sites along the Gulf of Mexico with customers located along the Eastern seaboard. The company's pipeline system serves most of the East Coast metropolitan markets including Atlanta, Washington, D.C., and New York City. Between 1984 and 1994, FERC certificated 12 of Transco's expansion projects – nine that linked the company's pipeline to areas in Pennsylvania and three others that added capacity to the section of the pipeline between Virginia and Alabama. *See Transco II,* 94 F.E.R.C. at 62,307, J.A. 200; *Transco I,* 87 F.E.R.C. at 61,383-84, J.A. 181-82. FERC initially certificated all of these projects under an incremental pricing scheme, before it issued the *1995 Statement. Transco I,* 87 F.E.R.C. at 61,385, J.A. 183.

In March 1995, Transco applied to FERC for a general rate increase pursuant to section 4 of the NGA. *Id.* at 61,383, J.A. 181. This rate filing included a variety of planned changes, but Transco did not seek to switch from incremental pricing. *Id.* Several pipeline customers who paid incremental costs intervened and objected to this proposal, arguing that Transco should instead adopt rolled-in rates. After a series of negotiations led to a settlement of several issues in dispute, FERC approved a deal reflecting the parties' partial agreement and scheduled the remaining matters for a hearing before an ALJ. *Id.* at 61,384, J.A. 182. As part of this arrangement, Transco reserved the right to seek rolled-in rates for its expansion projects at a later time.

In November 1996, while the administrative hearing on the remaining issues was in progress, Transco and other interested parties submitted a new rate change proposal to FERC. *Id.* Under this proposal, the company planned to roll in costs for the expansion projects on a prospective basis. The Commission consolidated the hearing on Transco's rolled-in rate proposal with the ongoing agency proceedings. Following an evidentiary hearing on this issue, the ALJ ruled that Transco was not entitled to charge rolled-in rates to cover expansion costs. *Transcon. Gas Pipe Line Corp.,* 82 F.E.R.C. ¶ 63,019, 1998 WL 213998 (1998), *reprinted in* J.A. 134-80. The ALJ determined that the proposal was governed by section 5 of the NGA. *Id.* at 65,163-66, J.A. 140-43. Applying the standards from the *1995 Statement,* the ALJ

found that existing customers faced an increase that exceeded the 5% presumption for rolled-in rates. *Id.* at 65,175-76, J.A. 152-53. Therefore, the ALJ concluded, Transco could not justify rolled-in rates simply by referring to evidence of general systemwide benefits. *Id.* at 65,179, J.A. 156.

On April 16, 1999, the Commission reversed the ALJ's ruling and approved the rolled-in rates proposed by Transco. *See Transco I,* 87 F.E.R.C. ¶ 61,087, J.A. 181. The Commission found that the ALJ erred in applying section 5, instead of section 4, of the NGA. The Commission also determined that the ALJ had misapplied the *1995 Statement* in assessing Transco's proposal. Rather than evaluating the combined rate impact of all 12 expansion projects in light of the 5% presumption, FERC held that the correct methodology was to apply the 5% presumption to interrelated groups of projects. *Id.* at 61,389, J.A. 187. Dividing the projects into seven groups, FERC found that the rate change for each group would not exceed the 5% threshold and that Transco had shown benefits that satisfied its burden of proof. *Id.* at 61,394-95, J.A. 192-93.

Petitioners filed a request for rehearing. FERC then issued the new 1999 Policy Statement, *i.e.,* after petitioners' request for rehearing had been filed. On March 28, 2001, the Commission denied petitioners' requests for a rehearing on its initial Order. *Transco II,* 94 F.E.R.C. ¶ 61,362, J.A. 199. The Commission declined to apply the new 1999 Policy Statement, because the Transco case had been fully litigated under the 1995 Policy Statement. *Id.* at 62,310, J.A. 203. The Commission then upheld its initial finding that Transco's rolled-in rate was warranted under the statute based on the factors in the *1995 Statement*:

> The Commission is unpersuaded by ConEdison, et al.'s arguments that

Transco failed to meet its Section 4 burden with regards to its roll-in proposal. Transco has sufficiently shown that rolled-in rates are just and reasonable as evidenced by the Commission's findings that: (1) the expansion facilities are fully integrated with Transco's system; (2) the expansion facilities provide significant system benefits; and (3) the rate impact of rolling in the costs of the expansion facilities is less than 5 percent.

*Id.* at 62,316, J.A. 209.

On the same day that FERC issued its decision in *Transco II,* the Commission decided another, unrelated case in which it applied the 1999 Policy Statement. *See Transcon. Gas Pipe Line Corp.,* 94 F.E.R.C. ¶ 61,360, 2001 WL 1842430 (2001). Petitioners again sought rehearing, contending that the 1999 Policy Statement should have been applied to Transco in this proceeding as well. On June 13, 2001, FERC denied petitioners' requests for further rehearing. *Transco III,* 95 F.E.R.C. ¶ 61,388, J.A. 232. The Commission specifically addressed arguments that the *1999 Statement* should have governed, as in the other case decided on the same day as *Transco II. Id.* at 62,450-51, J.A. 235-36. First, FERC noted that the projects in the two cases were of a different vintage. The Commission also reiterated that, in Transco's case, the parties had completed the evidentiary hearing under the *1995 Statement.* The same was not true in the other case. Finally, the Commission noted that its handling of Transco's rate change proposal was not inconsistent with the policy goals articulated in the *1999 Statement. Id.*

This petition for review followed.

## II. ANALYSIS

■ FERC's orders must be upheld unless they are "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Union Pac. Fuels, Inc. v. FERC,* 129 F.3d 157, 161 (D.C.Cir.1997). The court's role is "limited to assuring that the Commission's decisionmaking is reasoned, principled, and based upon the record." *Pennsylvania Office of Consumer Advocate v. FERC,* 131 F.3d 182, 185 (D.C.Cir.1997). In reviewing FERC's orders, we must be certain that the Commission has considered the relevant data and "articulate[d] … a rational connection between the facts found and the choice made." *Ass'n of Oil Pipe Lines v. FERC,* 83 F.3d 1424, 1431 (D.C.Cir.1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983)).

Petitioners maintain that FERC acted unreasonably by ignoring the relevant standards and factors articulated in the 1999 Policy Statement. They argue that, once FERC issued the *1999 Statement,* the continued application of the *1995 Statement* in Transco's rate case was impermissible. They further contend that the Commission's use of the earlier policy was unreasonable, because neither the pipeline nor its customers had a reliance interest in the previous policy. In petitioners' view, FERC had an obligation to apply the *1999 Statement* retroactively to all currently pending cases – even including those in which the record had been fully developed under a lawful pre-existing policy statement. Petitioners' view is misguided.

▮ Normally, an agency must adhere to its precedents in adjudicating cases before it. *See Hatch v. FERC,* 654 F.2d 825, 835 (D.C.Cir.1981). An agency may, within the realm of its statutory authority, change the established law and apply newly created rules. *Id.* at 837 (citing *NLRB v. Bell Aerospace,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)). Such

changes may occur in the course of an adjudication, so long as the agency acts pursuant to delegated authority, adopts a permissible construction of the statute, and adopts a rule that is not arbitrary and capricious. *NAACP v. FCC,* 682 F.2d 993, 998 (D.C.Cir.1982). A new rule may be applied retroactively to the parties in an ongoing adjudication, so long as the parties before the agency are given notice and an opportunity to offer evidence bearing on the new standard, *Hatch,* 654 F.2d at 835, and the affected parties have not detrimentally relied on the established legal regime, *Clark-Cowlitz Joint Operating Agency v. FERC,* 826 F.2d 1074, 1081 (D.C.Cir.1987) (en banc); *Retail, Wholesale & Dep't Store Union v. NLRB,* 466 F.2d 380, 390 (D.C.Cir.1972).

▮ "Policy statements" differ from substantive rules that carry the "force of law," because they lack "present binding effect" on the agency. *Interstate Natural Gas Ass'n v. FERC,* 285 F.3d 18, ·59 (D.C.Cir.2002). When an agency hears a case under an established policy statement, it may decide the case using that policy statement if the decision is not otherwise arbitrary and capricious. *See, e.g., Woodland Broad. v. FCC,* 414 F.2d 1160, 1164 (D.C.Cir.1969). If, however, the agency changes its policy statement before the case is complete, it must explain why the pending case should be decided on the basis of the old versus the new policy. *Williston Basin Interstate Pipeline Co. v. FERC,* 165 F.3d 54, 62 (D.C.Cir.1999).

▮ Thus, the principles governing retroactivity differ depending upon whether the agency has acted to change the substantive law or merely issue a new, non-binding policy statement. If an agency adopts a new rule that reflects a change in "law," we presume that the new rule will be given retroactive application. The agency thus may decide a pending case by

applying the new substantive rule, subject to notice requirements and detrimental reliance considerations. *Clark-Cowlitz Joint Operating Agency*, 826 F.2d at 1081. If, however, an agency merely adopts a new "policy statement" that does not purport to have the "force of law," it is "binding on no party and ha[s] no precedential effect." *Panhandle Eastern Pipe Line Co. v. FERC*, 198 F.3d 266, 269 (D.C.Cir.1999). The agency need only give a reasoned explanation for its failure to apply a new policy statement in a pending case tried under an old policy statement. *Williston Basin*, 165 F.3d at 62.

Contrary to petitioners' suggestion, *Williston Basin* does not stand for the proposition that an agency *must* apply a newly adopted policy statement to all pending cases. In *Williston Basin*, FERC "shifted course" with regard to one of the policies in dispute while the case was on appeal in this court. The court therefore held that the case should be remanded to the agency to allow FERC to reconsider its application of the pre-existing policy in light of the change. *Id.* The court did not indicate which policy should be applied by the agency on remand, because it was understood that neither policy statement carried the "force of law." In other words, the court did not presume that a new policy statement *must* be applied retroactively to the parties in a pending case, for the obvious reason that a policy statement only signals the agency's possible behavior in future cases.

Petitioners cite *Tennessee Gas Pipeline Co.*, 76 F.E.R.C. ¶ 61,022, 1996 WL 383447 (1996), *aff'd, "Complex" Consol. Edison Co. v. FERC*, 165 F.3d 992 (D.C.Cir.1999), and *Pacific Gas Transmission Co.*, 50 F.E.R.C. ¶ 61,067, 1990 WL 488670 (1990), in support of their view that new policy statements *must* be applied to pending cases. The decisions in these cases do not say this. Rather, in these cases, the agen-

cy opted to apply "new" policies to ongoing adjudications. But this is neither surprising nor impermissible. FERC merely exercised its discretion to apply new policies to ongoing adjudications. The agency did not say that it was bound to follow the policy statements in all future cases, nor did the reviewing court.

■ In this case, FERC's new policy statement did not purport to carry the "force of law." The *1999 Statement* was non-binding and it was issued with a statement that FERC intended to change its enforcement regime in *future* rate cases. Furthermore, there is nothing in the record of this case indicating that application of the *1995 Statement* was unreasonable or otherwise unlawful. Nonetheless, FERC had a duty to explain why it chose to apply the old, and not the new, pricing policy in *Transco II* and *Transco III*. Indeed, the need for an explanation is quite apparent here, because the Commission elected to apply the new policy in another rate case on the same day that it decided to apply the 1995 Policy Statement, and declined to apply the 1999 Policy Statement, in *Transco II*. *See Williston Basin*, 165 F.3d at 62. Petitioners claim that the agency's decision on this score cannot survive review. We disagree.

Petitioners argue that FERC's "vintage" distinction fails to justify its use of the 1995 Policy Statement in the present case. While the "vintage" concept appears to denote the length of time that the pipeline facilities have been incrementally priced, *see Transcon. Gas Pipe Line Corp.*, 94 F.E.R.C. at 62,303, Respondent's Br. at 19 n.8, the Commission did not provide a clear definition of this term and did not adequately explain why a different "vintage" matters in its decision about which policy statement should apply. We therefore agree with petitioners that this justifi-

cation alone cannot sustain the agency's decision.

The Commission provided a second explanation for handling the two cases differently, however – administrative convenience. Unlike the instant case, in which all of the underlying litigation was completed before the announcement of the new 1999 Policy Statement, the original filing in the second rate case did not occur until 2000. *Transcon. Gas Pipe Line Corp.*, 94 F.E.R.C. at 62,299. When FERC rejected petitioners' first request for rehearing in *Transco II*, the Commission explained that it would apply the *1995 Statement* because the factual record had been fully developed:

> The hearing in this case was conducted while the 1995 Pricing Policy Statement was in effect, and all the parties have presented evidence and filed pleadings based on the application of that policy. By contrast, the new policy having not been established until after the instant rehearing requests were filed, there is no record in this case upon which the Commission could make a determination as to how the new policy should apply, and the parties have had no opportunity to present positions on that issue.

*Transco II*, 94 F.E.R.C. at 62,310, J.A. 203. The Commission referred to this same rationale in denying petitioners' second request for rehearing:

> Because the hearing took place while the 1995 Pricing Policy Statement was in effect, and the parties' evidence and arguments were presented with reference to that policy, the Commission reasonably applied the 1995 Pricing Policy to the issues in this case.

*Transco III*, 95 F.E.R.C. at 62,451, J.A. 236. In both of these statements, FERC suggested that applying the *1999 Statement* would lead to significant delays and inconveniences. The parties had already developed an entire evidentiary record

highlighting the factors relevant to the 1995 Policy Statement. The *1995 Statement* was not unreasonable or unlawful, either facially or as applied in this case, so the Commission was not foreclosed from relying on it in assessing the merits of Transco's proposal. And reopening the record would have wasted significant time and money, which would have undermined the agency's interest in efficiency and the parties' interest in a prompt resolution of the matter. We therefore find that FERC's justification for applying the 1995 Policy Statement in the Transco case is reasonable and consistent with the overall goals of the Natural Gas Act.

### III. CONCLUSION

For the reasons discussed above, we hereby deny the petitions for review.