# District of Columbia
# Court of Appeals

**No. 15-AA-979**

GUY DURANT, *et al.*,

Petitioners,

v.

DISTRICT OF COLUMBIA ZONING COMMISSION,

Respondent,

    &                                                 **ZC10-28(3)**

901 MONROE STREET, LLC,

Intervenor.

On Petition for Review of an Order
of the District of Columbia Office of Administrative Hearings

BEFORE: GLICKMAN and MCLEESE, *Associate Judges*; and STEADMAN, *Senior Judge.*

## JUDGMENT

This case came to be heard on the administrative record, a certified copy of the agency hearing transcript and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the order of the Zoning Commission is set aside, and the application is denied.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: May 26, 2016.

Opinion by Associate Judge Roy W. McLeese.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-979

FILED 5/26/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

GUY DURANT, ET AL., PETITIONERS,

v.

DISTRICT OF COLUMBIA ZONING COMMISSION, RESPONDENT,

and

901 MONROE STREET, LLC, INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Zoning Commission
(ZC10-28(3))

(Argued March 17, 2016                          Decided May 26, 2016)

*David W. Brown* for petitioners.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, filed a statement in lieu of brief in support of respondent.

*Paul J. Kiernan*, with whom *Paul A. Tummonds, Jr.* and *Cary R. Kadlecek* were on the brief, for intervenor.

Before GLICKMAN and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

MCLEESE, *Associate Judge*: In the order under review, the Zoning Commission approved an application for a Planned Unit Development ("PUD") submitted by intervenor 901 Monroe Street, LLC. Petitioners, a group of individuals who live within 200 feet of the proposed project ("the 200-Footers"), challenge the Commission's order, arguing that the proposed PUD would be inconsistent with the District's Comprehensive Plan. We set aside the Commission's order.

## I.

The Commission reviews PUD applications in light of the Comprehensive Plan, which establishes a "broad framework intended to guide the future land use planning decisions for the District." *Wisconsin-Newark Neighborhood Coal. v. District of Columbia Zoning Comm'n*, 33 A.3d 382, 394 (D.C. 2011) (internal quotation marks omitted). The Comprehensive Plan includes the Land Use Element, which "provides direction on a range of development, conservation, and land use compatibility issues." 10-A DCMR § 300.1 (2016). The Future Land Use Map ("FLUM") visually depicts the policies reflected in the Land Use Element. 10-A DCMR § 225.1 (2016). The FLUM categorizes areas as low, moderate, medium, or high density. *See generally id.* at §§ 225.2-.11.

901 Monroe seeks to construct a six-story building on a parcel of land adjoining Monroe Street, between 9th and 10th Streets, Northeast. *Durant v. District of Columbia Zoning Comm'n*, 65 A.3d 1161, 1164-65 (D.C. 2013) ("*Durant I*"). The building would include up to eight commercial tenants on the ground floor and over two-hundred residential units above ground level. *Id.* at 1164. The building would reach a maximum height of sixty feet, eight inches and would have a floor-to-area ratio ("FAR") of 3.31. *Id.* FAR is a measure of building density and is "determined by dividing the gross floor area of all buildings on a lot by the area of that lot." *Foggy Bottom Ass'n v. District of Columbia Zoning Comm'n*, 979 A.2d 1160, 1168 n.12 (D.C. 2009).

At the time 901 Monroe submitted its application, five detached residential houses and one two-story commercial building stood on the parcel. *Durant v. District of Columbia Zoning Commission*, 99 A.3d 253, 254-55 (D.C. 2014) ("*Durant II*"). The parcel was zoned for R-2 residential use ("one-family, semi-detached dwellings") and C-1 commercial use ("neighborhood shopping"). *Id.* at 255 (internal quotation marks omitted). The FLUM designates most of the parcel for low-density residential use and parts of the parcel for low-density and moderate-density mixed use. *Id.*

The Commission approved the proposed PUD in June 2012. *Durant I*, 65 A.3d at 1162. The 200-Footers sought review in this court, which remanded for the Commission to further explain its reasoning. *Id.* at 1171-72. The Commission again approved the proposed PUD, concluding that the proposed PUD would be a moderate-density development and would be consistent with the Comprehensive Plan. *Durant II*, 99 A.3d at 256. The 200-Footers again sought review in this court, which remanded for the Commission to further address, among other things, "whether the project should properly be characterized as a moderate-density use or a medium-density use." *Id.* at 262.

On remand, the Commission approved the proposed PUD for a third time. The Commission reiterated its prior conclusion that the proposed PUD would be a "moderate-density residential development." The Commission also concluded that the building's architecture reduced the building's visual impact so as to make the building compatible with the FLUM's description of the neighborhood.

## II.

## A.

"We normally defer to [an] agency's decision so long as it flows rationally from the facts and is supported by substantial evidence." *Levy v. District of Columbia Rental Hous. Comm'n*, 126 A.3d 684, 688 (D.C. 2015). Specifically, "[b]ecause of the Commission's statutory role and subject-matter expertise, we generally defer to the Commission's interpretation of the zoning regulations and their relationship to the Comprehensive Plan." *Howell v. District of Columbia Zoning Comm'n*, 97 A.3d 579, 581 (D.C. 2014) (brackets and internal quotation marks omitted). We do not defer, however, to an agency interpretation that is unreasonable or contrary to the language of the applicable provisions. *E.g.*, *Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 642 A.2d 125, 128 (D.C. 1994).

The FLUM describes the types of structures generally found in areas designated for moderate-density and medium-density residential use. 10-A DCMR §§ 225.4, 225.5. Moderate-density residential areas are generally "characterized by a mix of single family homes, 2-4 unit buildings, row houses, and low-rise

apartment buildings." 10-A DCMR § 225.4. R-3, R-4, and R-5-A zoning districts are generally consistent with moderate-density residential use, although "the R-5-B district and other zones may also apply in some locations." 10-A DCMR § 225.4.[1] The R-3 district is "designed essentially for row dwellings." 11 DCMR § 320.1 (2016). The R-4 district is also designed for row dwellings, but includes areas in which a substantial number of row dwellings have been converted into multi-family dwellings. 11 DCMR § 330.1 (2016). R-5 districts permit a variety of residential structures and are subdivided by permissible building height and density. 11 DCMR § 350.1 (2016). The R-5-A district permits "low height and density" structures. 11 DCMR § 350.2 (2016). Ordinarily, structures in the R-5-A district may not be higher than three stories and may not have a FAR greater than 0.9. 11 DCMR §§ 400.1, 402.4 (2016). The R-5-B district permits "moderate height and density" structures. 11 DCMR § 350.2 (2016). Ordinarily, structures in the R-5-B district may not exceed fifty feet in height, not including any penthouse, and may not have a FAR greater than 1.8. 11 DCMR §§ 400.1, 400.5, 402.4 (2016).

---

[1] The zoning regulations have been amended effective September 2016. Text and Map Amendment to Implement the Comprehensive Revisions to the Zoning Regulations, 63 D.C. Reg. 2447, 2447-3651 (Jan. 14, 2016) (to be codified at 11-A DCMR § 100 et seq.); *id.* at 2834-86 (revised regulations regarding residential districts); *id.* at 2475-76 (table showing relationship between previous residential zoning districts and new residential zoning districts). We refer to the currently applicable zoning districts.

Medium-density residential areas are "neighborhoods or areas where mid-rise (4-7 stor[y]) apartment buildings are the predominant use." 10-A DCMR § 225.5. R-5-B and R-5-C zones are generally consistent with medium-density residential use. 10-A DCMR § 225.5. Ordinarily, structures in the R-5-C district may not exceed sixty feet in height, not including any penthouse, and may not have a FAR greater than 3.0. 11 DCMR §§ 400.1, 400.5, 402.4 (2016).

**B.**

The 200-Footers challenge the Commission's conclusion that the proposed PUD would be a moderate-density residential development under the FLUM. We find the Commission's explanation for that conclusion lacking in several respects.

First, the Commission did not address much of the language used in the FLUM's definitions. For example, the Commission did not explain why the proposed PUD -- a six-story apartment building -- should not be characterized as a "mid-rise (4-7 stor[y]) apartment building[]," which is generally consistent with medium-density residential use. 10-A DCMR § 225.5. Nor did the Commission explain why the proposed PUD is comparable to the smaller-scale structures in the

definition of moderate-density residential use, including single-family homes, low-rise garden apartments, two- to four-unit buildings, and row houses. 10-A DCMR § 225.4.

Second, the Commission relied primarily on architectural features that would diminish the proposed building's overall visual impact, such as the top floor's setback from the edge of the building and the building's setback from the property line. Although those considerations are potentially relevant to other issues, they do not support a conclusion that the proposed building constitutes a moderate-density use under the FLUM, because the FLUM's definitions of "moderate density" and "medium density" focus on buildings' actual physical characteristics, such as the number of stories or units in a building, rather than on how the building would look to an observer. 10-A DCMR §§ 225.4, .5.

Third, the Commission placed unwarranted reliance on one component of the FLUM's definition of moderate-density residential use: that the R-5-B district "may also apply" in some moderate-density areas. We are not persuaded that the reference to the R-5-B district supports classifying the proposed PUD as a moderate-density residential use. As the Commission points out, the FLUM's definitions "describe neighborhoods, not buildings." Thus, although buildings

permissible in an R-5-B district may exist in moderate-density residential neighborhoods, 10-A DCMR § 225.4, that does not mean that such buildings are themselves necessarily understood to be moderate-density in character. To the contrary, moderate-density residential neighborhoods may contain some buildings that, considered in isolation, would not be moderate-density uses, such as "existing multi-story apartments, many built decades ago when the areas were zoned for more dense use (or were not zoned at all)." 10-A DCMR § 225.4.

It is true that the R-5-B district is generally described as involving "moderate density." 11 DCMR § 350.2 . But the R-5-B district can apply to a variety of structures, and the FLUM indicates that the R-5-B district is generally more consistent with medium-density residential neighborhoods than with moderate-density residential neighborhoods. *Id.* at §§ 225.4, 225.5. In any event, the proposed building in this case would not ordinarily be permissible in the R-5-B district. As previously noted, buildings in the R-5-B district ordinarily cannot have a FAR greater than 1.8. 11 DCMR § 402.4. The proposed building's FAR of 3.31 is far above that limit. In fact, the proposed building's FAR also exceeds the limits applicable in the R-5-B district to projects approved through the PUD process, which provides additional zoning flexibility for projects that provide special amenities. 11 DCMR §§ 2405.2, 2405.3 (b) (2016) (FAR generally limited to 3.0,

but may be increased to 3.15 in certain circumstances); *see generally, e.g.*, *Howell*, 97 A.3d at 581 (discussing PUD process). Thus, even if all buildings permissible in the R-5-B district should be considered moderate-density uses, the proposed building in this case does not appear to be permissible in the R-5-B district.

## C.

For the foregoing reasons, we conclude that the Commission has failed to justify a conclusion that the proposed PUD would be a moderate-density use. Ordinarily we would consider remanding for the Commission to consider in the first instance whether approval of the proposed PUD as a medium-density use would be permissible and appropriate under the circumstances. *Cf., e.g.*, *Sandoval v. District of Columbia Dep't of Emp't Servs.*, 93 A.3d 678, 681 (D.C. 2014) (vacating agency ruling and remanding to agency "to determine in the first instance how to proceed"). The 200-Footers oppose a third remand to the Commission, however, and 901 Monroe explicitly stated at oral argument that it did not seek such a remand. We accept the parties' agreement on that point. *Cf. R.A. Holman & Co. v. SEC*, 112 U.S. App. D.C. 43, 48 n.7, 299 F.2d 127, 133 n.7 (D.C. Cir. 1962) (declining to remand because, among other reasons, parties did not request remand).

## III.

For the foregoing reasons, the order of the Zoning Commission is set aside and the application is denied.

*So ordered.*