# District of Columbia
# Court of Appeals

No. 14-AA-328

MEDSTAR HEALTH, INC.,

Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH,
STATE HEALTH PLANNING AND DEVELOPMENT AGENCY, *et al.*,

Respondents.

FILED
SEP 15 2016
DISTRICT OF COLUMBIA
COURT OF APPEALS

DOH-14-13

On Petition for Review of an Order
of the District of Columbia Office of Administrative Hearings

BEFORE: EASTERLY and MCLEESE, *Associate Judges;* and KING, *Senior Judge.*

## J U D G M E N T

This case came to be heard on the administrative record, a certified copy of the agency hearing transcript and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the order issued by the Office of Administrative Hearings ("OAH") Administrative Law Judge, directing the State Health Planning and Development Agency ("SHPDA") to issue the District Hospital Partners ("DHP") a certificate of need, is reversed. The matter is remanded to OAH with instructions to remand to SHPDA to determine whether to modify or retract the certificate of need that it issued to DHP.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: September 15, 2016.

Opinion by Associate Judge Catharine Easterly.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-AA-328

FILED 9/15/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

MEDSTAR HEALTH, INC., PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH,
STATE HEALTH PLANNING AND DEVELOPMENT AGENCY, *et al.*, RESPONDENTS.

Petition for Review of a Decision of the Office of Administrative Hearings
(DOH-14-13)

(Argued February 4, 2016            Decided September 15, 2016)

*Daniel W. Wolff*, with whom *Kathleen M. Stratton* and *Laurel Pyke Malson* were on the briefs, for petitioner, MedStar Health, Inc.

*Mary L. Wilson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for respondent, District of Columbia Department of Health, State Health Planning and Development Agency.

*Amandeep S. Sidhu*, with whom *H. Guy Collier* and *Mary D. Hallerman* were on the briefs, for respondent, District Hospital Partners, LP.[1]

---

[1] We pause at the outset to discuss the identities of the parties to this appeal. It is somewhat odd that the State Health Planning and Development Agency (SHPDA) is the named respondent in this case. The subject of this appeal is MedStar's challenge to an order of the Office of Administrative Hearings (OAH) overturning SHPDA's decision. This court's rules require a petitioner seeking to

(continued…)

Before EASTERLY and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

EASTERLY, *Associate Judge*:   This case requires us to interpret the health services planning statute, D.C. Code §§ 44-401 to -421 (2013 Repl.), which regulates the volume and distribution of health services in the District.   The statute requires any entity seeking to offer a new health service in the District to first obtain a certificate of need from the Statewide Health Planning and Development Agency (SHPDA).   The statute directs appeals of SHPDA's certificate of need decisions to the Office of Administrative Hearings (OAH).   But the nature of this appellate

---

(…continued)

challenge an agency ruling to "specify the [agency] order . . . to be reviewed" and to "name the agency as a respondent."   D.C. App. R. 15 (a)(3) (2016).   This suggests OAH should be the respondent to this appeal.   But D.C. Code § 2-1831.16 (h) (2016 Supp.) expressly prohibits OAH from being named as "a party in any proceeding brought by a party in any court seeking judicial review of any order of" OAH and provides that "[o]nly the parties before [OAH] or any other party permitted to participate . . . shall be parties in any such proceeding for judicial review."   Thus, if any agency is to be named as a respondent, it seems SHPDA is the only option.

Similarly, the status of District Hospital Partners (DHP) as a respondent is uncertain.   DHP is a limited partnership between for-profit entity University Health Services, Inc., a healthcare management company, and non-profit entity George Washington University, which lost before SHPDA but prevailed before OAH. This court's rules indicate that such an entity should be an intervenor, not a respondent.   *See* D.C. App. R. 15 (a)(3)(B) (requiring the petitioner to "name the agency as a respondent"); D.C. App. R. 15 (d) (providing intervention-as-of-right to any "party to the agency proceeding" on appeal).   But in the caption of its Petition for Review by this court, MedStar designated DHP as the "Petitioner/Respondent," and no one has objected, at any point in this appeal, to DHP participating as a respondent.

review is unclear. In this case, we must determine the scope of OAH's authority to take new evidence and to overturn a decision made by SHPDA.

District Hospital Partners (DHP) applied for a certificate of need to build a new kidney and pancreas transplant facility in the District. SHPDA denied its application and DHP appealed to OAH. OAH overturned SHPDA's denial and ordered it to issue a certificate of need to DHP. In this court, MedStar Health, Inc.,[2] a competing kidney and pancreas transplant provider, and SHPDA both challenge OAH's decision. They argue that OAH "overstepped its [statutory] authority" by failing to give deference to SHPDA's fact finding and conclusions. DHP counters that OAH acted lawfully by taking new evidence and assessing the propriety of SHPDA's decision-making in light of the augmented record.

The state health planning statute does not clearly specify the standard of review OAH should employ when reviewing SHPDA's certificate of need decisions. Instead, the pertinent provision, D.C. Code § 44-413, contains seemingly conflicting language regarding the amount of deference, if any, OAH owes to SHPDA. Interpreting this ambiguous provision, we conclude that OAH is

---

[2] D.C. Code § 44-414 permits "[a]ny person" to contest, before this court, a final decision on a certificate of need application.

not empowered to do what it did in this case, i.e., conduct an evidentiary do-over and effectively assume de novo decision-making authority over the issuance of certificates of need.

Because OAH exceeded these bounds in reviewing SHPDA's decision to deny DHP a certificate of need, we reverse. But we decline MedStar's request that we reinstate SHPDA's order denying DHP a certificate of need. Instead, consistent with SHPDA's request to this court, we remand to OAH with instructions to remand to SHPDA so that it may determine, in light of current circumstances, whether it should adhere to its prior denial or allow DHP's certificate of need to remain in place.

## I.    Overview of Certificate of Need Application and Review Process

The Council of the District of Columbia created SHPDA to be "responsible for health systems development in the District." D.C. Code § 44-401 (19); *see also id.* § 44-402 (b). SHPDA is statutorily required to establish, update, and administer a Health Systems Plan, D.C. Code §§ 44-402 (b)(1), -404 (a), (e), which is the "planning and development blueprint" for provision of health services in the District, *Bio-Medical Applications v. District of Columbia Bd. of Appeals &*

*Review*, 829 A.2d 208, 210 (D.C. 2003). In the Plan, SHPDA identifies health services needs in the District and sets priorities for limitation or expansion of these services, D.C. Code § 44-404 (a)(1)-(5), in order to "ensure that health care resources are allocated appropriately."[3] *Bio-Medical*, 829 A.2d at 210 (citing D.C. Code § 44-404 (a)). The certificate of need program, administered by SHPDA,[4] is essential to its implementation of the Plan. "[A]ll persons proposing to offer or develop . . . a new institutional health service" must obtain a certificate of need "prior to proceeding with that offering, development, or obligation." D.C. Code § 44-406 (a).

Pursuant to its statutory authority, SHPDA promulgated regulations setting forth the comprehensive procedure by which applications for a certificate of need are vetted.[5] *See* 22-B DCMR §§ 4000.1-4599.1 (2014). First, when an entity is planning to submit a certificate of need application, it must give notice to SHPDA,[6]

---

[3] SHPDA is accordingly also required to gather, maintain, and analyze comprehensive data on the District's health services. D.C. Code §§ 44-402 (b)(2), -405 (a), (d), (e).

[4] *See* D.C. Code § 44-402 (b)(3).

[5] D.C. Code § 44-409 (c) (requiring SHPDA to "establish, adopt, and publish procedures and criteria for the review of certificate of need applications").

[6] The prospective applicant must also give public notice. 22-B DCMR § 4003.3.

22-B DCMR § 4003.4, at which point SHPDA must assign a staff member to provide the prospective applicant with "technical assistance" in preparing its application, 22-B DCMR § 4003.6, 4003.10. Once an entity submits an application, SHPDA staff reviews it along with any evidence presented at a public hearing.[7] SHPDA staff then issues a "staff analysis"—a preliminary recommendation on whether to grant a certificate of need—and transmits this analysis, along with the application, to the Statewide Health Coordinating Council (SHCC), an independent body of health industry stakeholders.[8] 22-B DCMR § 4303.1. Next, SHCC, pursuant to its own statutory obligations, makes a recommendation regarding whether to approve or deny a certificate of need. D.C. Code § 44-403 (b)(3); *see* 22-B DCMR § 4303.3, 4303.7. Finally, the application, the SHPDA staff analysis, and the recommendation of SHCC are submitted to the SHPDA Director for his consideration. *See* 22-B DCMR §§ 4303.8, 4308.1 (b).

---

[7] "[A]n affected person" may seek a public hearing on an application for a certificate of need, 22-B DCMR § 4302.2, or SHPDA may call a hearing "on its own initiative," 22-B DCMR § 4302.1.

[8] D.C. Code §§ 44-401 (18), -403 (c) (membership must include four health services consumers; three public members; two representatives from health care facilities; one physician, one nurse, and one member of the insurance industry, each representing an unincorporated association of individuals from their respective professions; and the director of the Department of Mental Health or his designee). In addition to assisting SHPDA in the evaluation of certificate of need applications, SHCC must also assist SHPDA in the development of the Health Systems Plan. D.C. Code § 44-403 (b)(1)-(3).

Pursuant to statutory requirements and criteria set forth in the Health Systems Plan[9] and SHPDA's regulations,[10] the Director makes a decision to grant or deny the application for a certificate of need. D.C. Code § 44-410 (c).

The Director is required by statute to "provide . . . a detailed explanation of any decision" in writing. D.C. Code §§ 44-409 (e), -410 (a).[11] "[A]ny person" dissatisfied with the Director's decision may, "for good cause shown," seek reconsideration at a public hearing. D.C. Code § 44-412 (a). "Good cause" is limited to:

(1)  Presentation of significant and relevant information not previously considered by the SHPDA;

(2)  Demonstration of a significant change in a factor or circumstance relied upon in reaching the decision;

(3)  Demonstration of a material failure to follow SHPDA review procedures; or

---

[9]  STATE HEALTH PLANNING AND DEVELOPMENT AGENCY, DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, STATE HEALTH PLAN 41 (2012), http://doh.dc.gov/node/104362 (explaining that under SHPDA's "health planning framework," the agency and SHCC evaluate certificate of need applications by analyzing "six health system characteristics" of a proposed service: need, accessibility, quality, acceptability, continuity of care, and financial viability).

[10]  *See* 22-B DCMR §§ 4012, 4307.

[11]  SHPDA's regulations likewise specify that the Director must issue a written decision, 22-B DCMR § 4308.1, containing "findings of fact," 22-B DCMR § 4308.2, "based on . . . the record [that] shall include SHPDA staff research, testimony from a public hearing, and the information the applicant has provided," 22-B DCMR § 4308.1.

(4)     Presentation of another basis for a public hearing such as when the SHPDA determines that a hearing is in the public interest.

D.C. Code § 44-412 (b); *see also* 22-B DCMR § 4310.3 (interpreting the good cause factors and explaining that "information not previously considered by SHPDA" under D.C. Code § 44-412 (b)(1) does not include "[i]nformation that could have been presented during the course of review with reasonable diligence").

If SHPDA grants reconsideration, it must hold a public hearing, D.C. Code § 44-412 (c); *see also* 22-B DCMR § 4310.4, after which SHPDA must issue a new decision in writing "affirm[ing], modify[ing], or revers[ing]" and "giving the basis for its decision," D.C. Code § 44-412 (d); *see also* 22-B  DCMR § 4310.21 (requiring the Director's written decision after reconsideration to include "findings of fact and conclusions of law").  This "final decision shall not be reconsidered." D.C. Code § 44-412 (d); *see also* 22-B DCMR § 4310.23 ("[This] decision shall constitute the final decision of SHPDA for all purposes.").  But this decision does not conclude administrative proceedings.

The health services planning statute authorizes an "[a]dministrative appeal" to OAH after reconsideration or if SHPDA denies or fails to timely respond to a request for reconsideration.  D.C. Code § 44-413 (a); *see also* 22-B DCMR

§ 4311.1. OAH "shall review the record and any additional evidence presented on behalf of the parties to the appeal." D.C. Code § 44-413 (b). In so doing, OAH "shall take due account of the presumption of official regularity, [and] the experience[] and specialized competence of the SHPDA." *Id.* OAH is also directed to conduct "[a]ny contested case hearing required by § 2-509" of the District's Administrative Procedure Act (APA).[12] D.C. Code § 44-413 (c). Upon completing its review, OAH must issue a "written decision," which "shall be considered the final decision of the SHPDA." D.C. Code § 44-413 (b). "Any person who contests the final decision on an application for a certificate of need . . . is entitled to judicial review" by this court "upon filing . . . a written petition for review pursuant to § 2-510" of the APA. D.C. Code § 44-414; *see also* 22-B DCMR § 4311.2 (acknowledging that "after exhausting all administrative remedies including an appeal to [OAH]," "[a] person adversely affected by a SHPDA decision may appeal" to this court).

---

[12] D.C. Code §§ 2-501 to -510 (2016 Supp.).

## II.     Facts and Procedural History

In late 2012, DHP submitted a lengthy application for a certificate of need to allow it to establish a new kidney and pancreas transplant facility.[13]  In early 2013, SHPDA held a public hearing on the application.  DHP presented testimony from nine witnesses in an effort to demonstrate that there was a need for a new transplant facility, and in particular, that its proposed transplant program would increase the number of donors (and thus available organs) and expand access to transplant services in the District.  After DHP concluded its presentation, affiliates of petitioner MedStar, which was the District's only provider of kidney and pancreas transplants to "non-military, non-pediatric" patients, voiced its opposition.[14]     MedStar's witnesses explained that, although there was unquestionably a high demand for kidney and pancreas transplants in the District, the impediment to meeting that demand was a shortage of organs, rather than a shortage of transplant services.  They further questioned whether DHP could increase organ donation rates locally, contrary to national trends, and indicated that

---

[13] The application was 109 pages with 326 pages in attachments.

[14]  At that time, MedStar's transplant program, the MedStar Georgetown Transplant Institute, operated out of two separate facilities in the District: Washington Hospital Center and Georgetown University Hospital.

even if the supply of organs available for transplant increased, MedStar could meet the corresponding demand for services.

SHPDA staff concluded that DHP had failed to demonstrate a need for a new kidney and pancreas transplant facility in the District, particularly in light of the shortage of transplantable organs, and issued a twenty-seven-page report that recommended denying DHP a certificate of need.  Subsequently, a committee of SHCC reviewed the application and held its own public hearing, at which a central focus was on DHP's ability to enlarge the pool of organ donors through community outreach.  At the conclusion of the hearing, a majority of the committee voted to conditionally recommend granting DHP a certificate of need; SHCC, without discussion, orally voted to adopt the committee's conditional recommendation.  SHCC did not issue a written report.

The SHPDA Director then reviewed DHP's application for a certificate of need (including supplemental materials submitted after the SHPDA staff and

SHCC hearings[15]), SHPDA's staff analysis, and SHCC's recommendation, and he issued his findings in May 2013. In a thirty-page decision, he concluded that DHP had met all but one of SHPDA's criteria[16] for grant of a certificate of need for its proposed facility: DHP had not demonstrated that the already-available facilities in the District were inadequate to meet the demand for transplant services as limited by the supply of organs. He explained that DHP had failed to demonstrate that it could sufficiently increase the number of organ donations, particularly from living donors, so as to justify the establishment of a new transplant facility. Thus, the Director denied DHP's application for a certificate of need.

DHP requested reconsideration of the Director's decision, asserting that there was "good cause" under all four permissible grounds listed in D.C. Code § 44-412 (b). DHP attached a number of exhibits to support its request, including a 2011 research report, a community outreach plan for 2014-15, and a letter of commitment by a managed care business that promised to direct its patients to

---

[15] Among DHP's materials was a Memorandum of Understanding between DHP and the Minority Organ and Tissue Transplant Education Program; the two entities pledged to work together to do community outreach to promote organ donation.

[16] *See supra* notes 9, 10.

DHP for transplant services.[17] The Director denied DHP's request, concluding that it had failed to show good cause and reiterating his assessment that DHP had not "demonstrated how it will be able to obtain the organs." He noted that deceased donor transplants in the District and around the country have remained stable, and that "living donor transplants have been declining."

DHP appealed to OAH. MedStar moved to intervene in the appeal, but an OAH Administrative Law Judge (ALJ) denied MedStar's request.[18] OAH only accepted briefing and evidence from DHP as the petitioner and SHPDA as the respondent.

---

[17] Although the Director acknowledged this evidence in his reconsideration decision, he had no obligation to do so under SHPDA's regulations because it all could have been submitted with DHP's initial application. *See* 22-B DCMR § 4310.3 (a).

[18] OAH regulations do not provide for intervention as of right, even to parties that participated in the agency proceeding on appeal at OAH. *See* 1 DCMR § 2816.2 (2010) (amended 2016). It seems problematic for OAH, in conducting an administrative appeal of a SHPDA decision, to deny intervenor status to a party who participated in SHPDA proceedings and has a concrete interest in the certificate of need decision. As OAH's decision has not been challenged on this basis, however, we do not address it.

The parties preliminarily litigated whether DHP could submit new evidence to OAH. SHPDA moved in limine to exclude any new evidence, arguing that permitting new evidence would "vitiate the deference this Administrative Court is required by statute and case law to give to SHPDA," and noting that all the information proffered in DHP's prehearing statement could have been presented in the SHPDA proceedings. DHP opposed SHPDA's motion, arguing that OAH was authorized by D.C. Code § 44-413 to "review the record and any additional evidence presented on behalf of the parties to the appeal." The OAH ALJ concluded that DHP's understanding of D.C. Code § 44-413 comported with the "plain meaning" of the statute and denied SHPDA's motion. Thus, at the OAH hearing, the ALJ allowed DHP to present a variety of evidence not previously presented to SHPDA. This included both documentary evidence and testimonial evidence from some witnesses who were testifying anew and others who had not previously testified.

The OAH ALJ issued a "Final Order" in January 2014. At the outset of her order she stated that in compliance with D.C. Code § 44-413 (b), she would "review the record and any additional evidence presented on behalf of the parties" and "take due account of the presumption of official regularity, the experience, and specialized competence of the SHPDA." The OAH ALJ further stated that her

objective was only to determine if SHPDA's denial of a certificate of need was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."[19] But thereafter she made "findings of fact and conclusions of law" "[b]ased on the testimony of the witnesses, [her] evaluation of their credibility, the documents admitted into evidence and the entire record." The OAH ALJ found that the new evidence DHP had presented on appeal "better clarified" its argument that, if granted a certificate of need, it would be able to increase kidney donation rates. She ultimately concluded that DHP had "presented substantial evidence of need [for a new transplant facility] and SHPDA's conclusion to the contrary can no longer be supported." Accordingly, the OAH ALJ reversed and ordered SHPDA to issue a certificate of need to DHP.[20]

After SHPDA moved for and was denied reconsideration by OAH, MedStar filed a petition for review in this court. In their initial briefs, MedStar and DHP addressed[21] whether SHPDA's decision to deny a certificate of need was

---

[19] For this proposition, the OAH ALJ cited *Brown v. Watts*, 993 A.2d 529, 532 (D.C. 2010), but that case discussed this court's review of a decision by the Office of Employee Appeals (OEA), not OAH's review of a decision by SHPDA.

[20] In compliance with the OAH ALJ's order, SHPDA issued DHP a certificate of need in April 2014.

[21] SHPDA did not participate in the initial briefing in this court.

reasonable and supported by substantial evidence; whether OAH had improperly substituted its judgment for that of SHPDA; and whether OAH's decision that DHP had demonstrated a need for a new pancreas and kidney transplant facility was "supported by reliable, probative, and substantial evidence." At this court's request, MedStar, DHP, and SHPDA submitted supplemental briefs specifically addressing "the relationship between SHPDA and OAH, and in particular (a) the scope of OAH's fact-finding ability, and (b) OAH's standard of review for SHPDA's decisions regarding Certificates of Need."

In their supplemental briefs, MedStar and SHPDA assert that OAH does not possess broad authority to reopen the record and that it may only review new evidence "rarely, for compelling reasons like illuminating or explaining SHPDA's decision . . . and ascertaining whether SHPDA complied with the applicable procedural requirements where the existing record is inadequate." MedStar and SHPDA further argue that OAH should defer to SHPDA, the expert body, and review its decisions only to ensure they are supported by substantial evidence and are not arbitrary or capricious. DHP counters that OAH is entitled to hear "all evidence a party wishes to present to OAH, in addition to whatever evidence that party . . . presented during SHPDA's review." DHP also argues that OAH is "statutorily required" to make independent findings of fact because the health

services planning statute characterizes the OAH proceeding as a "contested case,"[22] which, by definition, must be resolved with written "findings of fact and conclusions of law," D.C. Code § 2-509 (e).

### III.    Analysis

This case comes to this court pursuant to D.C. Code § 44-414, which authorizes "[a]ny person who contests the final decision on an application for a certificate of need" to obtain judicial review under the APA, "after the exhaustion of all administrative remedies."  The scope of our review under the APA turns on the nature of the issues raised on appeal.[23]  MedStar and SHPDA argue that OAH acted in excess of its statutory authority under D.C. Code § 44-413 because, rather than deferring to SHPDA's decision-making, it took new evidence and considered anew whether DHP should be given a certificate of need.  DHP counters that, whatever deference OAH owes SHPDA, this deference cannot override OAH's

---

[22]  D.C. Code § 44-413 (c).

[23]  *See* D.C. Code § 2-510 (a)(3) (listing several standards available to this court for reviewing agency action).

authority to hear "any additional evidence."[24]  Because the dispute between the parties in this case requires us to decide the proper interpretation of a statute, a question of law, our review is de novo.  *See District of Columbia Office of Tax & Revenue v. Shuman*, 82 A.3d 58, 69 (D.C. 2013); *see also* D.C. Code § 2-510 (a)(3) (authorizing this court to set aside agency decisions that are "not in accordance with law" and that are made "[i]n excess of statutory . . . authority").

---

[24] In its supplemental brief, DHP also argues that this case is moot because, in December 2014, SHPDA issued a "Letter of Completion," which terminates the certificate of need review process.  *See* 22-B DCMR § 4006.6, 4006.7.  We disagree.  Once SHPDA had complied with the OAH order and issued DHP a certificate of need—after a petition for review was filed with this court, and after we had denied SHPDA's motion for a stay—SHPDA had no authority, in the absence of a directive from this court, to take further action and terminate the certificate of need review process with a Letter of Completion.  *See* D.C. Code § 2-510 (a) ("Upon the filing of a petition for review, the Court shall have jurisdiction of the proceeding . . . .").  Additionally, DHP argues that this case is moot because DHP's facility has been developed and is "fully operational."  This argument also fails.  By commencing operations while its certificate of need was still under judicial review and therefore vulnerable to revocation or modification, DHP proceeded "solely at its own risk" of being shut down for lack of proper authorization to operate.  *See* 22-B DCMR § 4000.4; *cf.* D.C. Code § 44-409 (j); 22-B DCMR § 4006.1, 4006.6 (prohibiting operation of facility without certification from SHPDA that it is "in compliance with the [certificate of need] requirements").

## A. OAH's Reviewing Authority under the Health Services Planning Statute

We begin our analysis with the plain language of D.C. Code § 44-413. *See District of Columbia Office of Tax & Revenue v. Sunbelt Beverage, LLC*, 64 A.3d 138, 145 (D.C. 2013). Section 44-413 (a) sets forth standing and exhaustion requirements for seeking review by OAH. Section 44-413 (b) contains rules governing OAH's review. Specifically, it directs that OAH "shall review the record and any additional evidence presented on behalf of the parties to the appeal" and "shall take due account of the presumption of official regularity, [and] the experience[] and specialized competence of the SHPDA." Section 44-413 (b) further provides that OAH's decision "shall be considered the final decision of the SHPDA." Lastly, section 44-413 (c) states that "[a]ny contested case hearing required by [D.C. Code] § 2-509, shall be conducted by" OAH.

We note at the outset that the Council, in drafting D.C. Code § 44-413, did not use familiar standard-of-review language to explain the scope of an agency's

reviewing authority.[25]  The statute does not say whether OAH is empowered to decide de novo whether a certificate of need should be issued, or instead whether OAH owes some amount of deference to SHPDA's decision-making and, if so, by what measure.

Arguably, the directive that OAH take "any additional evidence" suggests that it can make independent findings of fact, an element of de novo review in the agency context.  *See* 6 JACOB A. STEIN ET AL., BENDER'S ADMINISTRATIVE LAW § 51.04, at 308-09 (2016).  And we recognize that holding evidentiary hearings and making de novo decisions are common functions of OAH in the District's administrative system, typically when it provides the first opportunity to be heard after a regulatory agency has already made a less formal adjudicative

---

[25]  *See, e.g.*, D.C. Code § 2-360.03 (a) (designating the Contract Appeals Board as the "exclusive hearing tribunal" for protests of solicitations or awards of government contracts and defining its review as "de novo"); *id.* § 2-510 (a)(3) (enumerating the limited grounds on which this court may "hold unlawful and set aside" an agency decision); *id.* § 8-101.05h (2016 Supp.) (providing that in air pollution control cases OAH "shall provide a de novo hearing and shall determine whether the [regulatory agency's] action was legally proper"); *id.* § 38-1802.13 (c)(6)(B) (2013 Repl.) (directing that "[a] decision by an eligible chartering authority to revoke a charter shall be upheld" by a reviewing court "unless the decision is arbitrary and capricious or clearly erroneous").

determination.[26]

But other language in D.C. Code § 44-413 points in a different, more deferential direction. First, the statute does not permit OAH to clean the factual slate; rather, OAH must "review the record" developed before SHPDA. D.C. Code § 44-413 (b). Second, suggesting that OAH is not broadly authorized to augment the record so that it can assess for itself whether a certificate of need should be issued, OAH must "take due account of the presumption of official regularity, [and] the experience[] and specialized competence of the SHPDA."[27] *Id.* Third, the statute characterizes the proceeding before OAH as an "appeal" from "the final [SHPDA] decision." D.C. Code § 44-413 (a), (b). At least in judicial proceedings,

---

[26] *See, e.g.*, D.C. Code § 7-2341.17 (2013 Repl.) (appeals of Department of Health suspension or revocation of a license or certification for provision of emergency medical services); *id.* § 8-101.05h (appeals of Department of the Environment penalties for violations of the District's air pollution control program); D.C. Code § 47-4312 (2016 Supp.) (appeals of Office of Tax and Revenue proposed tax assessments).

[27] Our cases provide no guidance on the amount of deference that corresponds, in the administrative context, to "due account." But analogous language in other contexts, such as the "due regard" this court gives to a trial court's credibility determinations, indicates that the "due account" clause steers OAH review in a deferential direction. *See, e.g.*, *Jenkins v. Strauss*, 931 A.2d 1026, 1032 (D.C. 2007).

an appeal is not a forum for new fact-finding[28] or first-hand decision-making;[29] rather, the appellate inquiry is whether an already-made decision withstands some level of scrutiny based on the already-developed record.

In light of its omission of familiar standard-of-review language and its inclusion of facially conflicting directives, we conclude that the plain language of D.C. Code § 44-413 is ambiguous. Thus, to discern OAH's proper role in reviewing SHPDA's certificate of need decisions—i.e., whether OAH owes any deference to SHPDA and if so, how much—we "broaden our inquiry to examine the statute as a whole, pertinent case law, and the legislative history."[30] *District of*

---

[28] *See Hamilton v. Hojeij Branded Food, Inc.*, 41 A.3d 464, 473 (D.C. 2012) (explaining that in reviewing a decision arising from agency adjudication, "[i]t is incumbent upon [the reviewing tribunal] . . . to eschew appellate fact-finding").

[29] *See Dankman v. District of Columbia Bd. of Elections & Ethics*, 443 A.2d 507, 524 n.15 (D.C. 1981) (en banc) (Ferren, J., concurring in the result) ("Ordinarily, in reversing administrative agency rulings, we should merely declare the law and remand for the agency to proceed in light of our decision.").

[30] Once we have determined that an administrative statute is ambiguous, we may defer to an agency's interpretation of that ambiguity. *Nunnally v. District of Columbia Metro. Police Dep't*, 80 A.3d 1004, 1010 (D.C. 2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984)). But here, it is not readily apparent that we have an agency interpretation of D.C. Code § 44-413 that is entitled to deference. Recognizing that this court is the "final authority on issues of statutory construction," the degree of our deference, if any, to an agency interpretation turns on whether it is reasonable, consistent with the legislature's

(continued…)

---

(…continued)

intent, and within the scope of the agency's delegated, expert decision-making so as to merit deference. *See id.* at 1010-1012; *United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001) ("The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position.") (noting that "agencies charged with applying a statute necessarily make all sort of interpretive choices" and "not all of those choices bind judges to follow them").

We might defer to SHPDA's interpretation of D.C. Code § 44-413, as SHPDA argues we should. But SHPDA's expertise is in health services planning; it is not an expert in administrative review, the subject matter of § 44-413. Moreover, even if we were to defer to SHPDA on this issue, it is not clear how much weight we would give to SHPDA's interpretation of this statute as articulated in the brief submitted on its behalf by the Office of the Attorney General. *See Euclid Street, LLC v. District of Columbia Water & Sewer Auth.*, 41 A.3d 453, 460 & n.8 (D.C. 2012) ("[C]ourts 'have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question.'" (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988))); *Washington Gas Light Co. v. Pub. Serv. Comm'n*, 982 A.2d 691, 711 n.80 (D.C. 2009) (citing *Bowen*, 488 U.S. at 212, for the proposition that courts do not defer to agency positions "taken for the first time in a brief"); *cf. Johnson v. District of Columbia Dep't of Emp't Servs.*, 111 A.3d 9, 11 (D.C. 2015) ("In a *Chevron* analysis, consistent and longstanding agency interpretations, such as those enacted in regulations, merit the most deference.").

Alternatively, we might defer to OAH, the agency charged with actually administering § 44-413. But all we have from OAH addressing the scope of its reviewing authority over SHPDA is a single ALJ's decision in which she announced her review would be deferential but then effectively reviewed DHP's certificate of need application de novo.

Ultimately, we need not address how much, if any, deference either SHPDA or OAH should receive. This court defers only to an agency's reasonable interpretation of its operative statute, and as we explain, the statute cannot reasonably be interpreted to permit OAH to conduct an evidentiary do-over as it did in this case. *See District of Columbia Office of Tax & Revenue v. BAE Sys. Enter. Sys.*, 56 A.3d 477, 481 (D.C. 2012).

*Columbia v. Reid*, 104 A.3d 859, 868 (D.C. 2014).

Considering first whether OAH owes any deference to SHPDA, we conclude that it does. Examining the health services planning statute as a whole, we see that SHPDA is the statutorily designated expert body "for health systems development in the District." D.C. Code § 44-402 (b). It is SHPDA's job to closely monitor healthcare needs and the provision of medical services in the District, to collect and analyze associated data, and to develop and implement a responsive Health Systems Plan. *See* D.C. Code §§ 44-402 (b)(1)-(2), -404 (a), -405 (a). SHPDA's ability to effectively oversee and shape the District's health services landscape, as it is statutorily required to do, is inextricably linked to its authority to grant or deny certificates of need—this is a key mechanism SHPDA uses to expand or limit the availability of a health service in the District. *See* D.C. Code § 44-402 (b)(3). Moreover, because granting or denying a certificate of need impacts the entire community,[31] SHPDA must ensure that these decisions not only advance its policy

---

[31] Although SHPDA's certificate of need decisions are technically adjudicative in nature, directly affecting only the individual applicant's rights to develop a new facility, the considerations behind and impacts of these decisions are much broader. *Cf. Donnelly Assocs. v. District of Columbia Historic Preservation Review Bd.*, 520 A.2d 270, 277-78 (D.C. 1987) (distinguishing adjudicative agency actions, which are "directed at the rights of specific

(continued…)

goals but also balance the interests of the applicant, existing providers, District residents, and any other "affected person" who seeks to participate in the review process.[32] SHPDA "has been entrusted with the difficult task of deciding among many competing arguments and policies," and SHPDA's expertise in this "complex, esoteric" area of regulation is of the sort that induces the highest levels of deference. *See Office of People's Counsel v. Pub. Serv. Comm'n*, 610 A.2d 240, 243 (D.C. 1992) (explaining that because the Public Service Commission's ratemaking decisions involve a "complex, esoteric" area of regulation, the statute permits only the "narrowest [judicial] review").[33]

---

(…continued)
individuals," from "policy decision[s]," which are "directed toward the general public").

[32] *See* D.C. Code § 44-412 (a) (permitting "any person" the opportunity to request reconsideration of a certificate of need decision); 22-B DCMR § 4302.2 (requiring SHPDA to call a public hearing on a certificate of need application if any "affected person" so requests). By contrast, OAH has no obligation to accept input from the public, from industry stakeholders, or even from any party that participated in SHPDA's certificate of need review. *See* 28 DCMR § 2816.2.

[33] *See also, e.g.*, *Kamit Inst. for Magnificent Achievers v. District of Columbia Pub. Charter Sch. Bd.*, 55 A.3d 894, 899 (D.C. 2012) (acknowledging special deference owed to the Public Charter School Board in light of its expertise in education policy); *cf. MorphoTrust USA, Inc. v. District of Columbia Contract Appeals Bd.*, 115 A.3d 571, 582 (D.C. 2015) (holding that the Contract Appeals Board, the expert appellate agency, was required to conduct de novo review and not defer to non-expert executive decision-makers); *Union Dominion Mgmt. Co. v. District of Columbia Rental Hous. Comm'n*, 101 A.3d 426, 430 (D.C. 2014)

(continued…)

The alternative, reading the statute not to require any OAH deference to SHPDA's decision, would make little sense, as OAH is a generalist body with no subject-matter expertise in the provision of health care services in the District.[34] Reading the statute to not require deference would also yield an extremely inefficient regulatory scheme. The Council gave SHPDA broad discretion to design as comprehensive a process as necessary for thoughtful consideration of certificate of need applications.[35] *See* D.C. Code § 44-409 (c) (containing no limitations on SHPDA's authority to design the process for reviewing certificate of need applications). Additionally, the Council mandated that SHCC review each certificate of need application and submit a recommendation to SHPDA. D.C. Code § 44-403 (b). We do not think the Council meant to authorize such a resource-intensive review process at the SHPDA level—whereby the SHPDA

---

(…continued)

(holding that the Rental Housing Commission, an expert agency, should not defer to determinations of an OAH ALJ).

[34] *See District of Columbia Dep't of the Env't v. E. Capitol Exxon*, 64 A.3d 878, 881 (D.C. 2013) (acknowledging that OAH reviews decisions by many different agencies); *Shuman*, 82 A.3d at 69 (declining to impute to OAH "the degree of expertise possessed by more specialized administrative bodies").

[35] SHPDA developed a comprehensive process, *see, e.g.*, 22-B DCMR §§ 4302.1, 4302.2 (providing for a public hearing at SHPDA); *id.* § 4303.1 (requiring SHPDA staff review application and submit analysis to SHPDA Director)—one that begins even before an application has been submitted, *see id.* § 4003.6, 4003.10 (designating a SHPDA staff member to provide prospective applicants with "technical assistance" in preparing application).

Director obtains the recommendations of both its staff and SHCC, after each conducts its own independent review and holds public hearings to get input from interested parties—and then allow OAH to scrap the result of that process, conduct an evidentiary do-over, and decide anew whether to issue or deny a certificate of need.

Indeed, there are affirmative indicators in the statute that the Council does not want OAH to disregard all of the work culminating in SHPDA's decision. First, the directive in D.C. Code § 44-413 that OAH "shall take due account of the presumption of official regularity, [and] the experience[] and specialized competence of the SHPDA" is some indication that OAH should give substantial weight to all that has transpired at the SHPDA level. Second, before OAH may even conduct its "appellate" review, the health services planning statute requires that any person dissatisfied with SHPDA's decision first go back to SHPDA and attempt to show good cause for reconsideration, which includes new evidence and changed circumstances. D.C. Code §§ 44-412, -413.[36] This obligation to seek

---

[36] *See also Bio-Medical*, 829 A.2d at 214 ("A party who wishes to challenge . . . a [certificate of need] decision 'may not bypass the reconsideration process.'" (quoting *Capitol Hill Hosp. v. District of Columbia State Health Planning & Dev. Agency*, 600 A.2d 793, 799 n.14 (D.C. 1991))); *id.* at 214 (highlighting the integral role that requests for reconsideration play in the administrative appeal process for

(continued…)

reconsideration upon a showing of good cause is not simply an exhaustion requirement; by channeling factual presentations and substantive arguments to SHPDA in the first instance, the Council signaled that it intended SHPDA to be the primary decision-maker.

On the other side of the ledger, we see no indication that the Council intended to elevate the decision-making authority of OAH over that of SHPDA. It would be unusual to give OAH de novo reviewing authority over agency decisions regarding matters within that agency's technical expertise.[37] Were this the Council's intent, one might well expect some discussion in the legislative history. Instead, there is legislative silence. Even the reason for OAH's involvement in the

_____

(…continued)
certificates of need, and the fact that D.C. Code § 44-412 (d) refers to SHPDA's decision on reconsideration as its "final decision" on the application).

[37] Instead, when OAH interacts with other District agencies with subject-matter expertise, either OAH defers to the agency, *see, e.g.*, *E. Capitol Exxon*, 64 A.3d at 881 (holding that OAH must defer to the District of Columbia Department of the Environment's interpretation of the laws and regulations it administers, as reflected in its charging decisions), or the roles are reversed and OAH is the first-level adjudicator, over whom the expert agency has appellate reviewing authority, *see, e.g.*, D.C. Code §§ 2-1831.03 (b-1) (authorizing OAH ALJs to serve the Rent Administrator's function), 42-3502.02 (a)(2) (2013 Repl.) (providing that OAH decisions made under authority to act as Rent Administrator are subject to review by the Rental Housing Commission); *see also* D.C. Code § 2-1831.16 (b) (allowing certain agencies for which OAH conducts hearings to retain jurisdiction to review OAH orders on appeal).

certificate of need program is unexplained.[38]  There is certainly no indication that OAH's review was meant to be a central component of the District's certificate of need program—which would be the effect of giving OAH the authority to conduct de novo review.

Having concluded that OAH must defer to SHPDA's certificate of need decisions, we must still make sense of the statutory language that OAH "shall" consider "any additional evidence" beyond the administrative record, even as it conducts its review with "due account of the presumption of official regularity,

---

[38]  As best we can tell, OAH's role appears to be a holdover from the District's first health services planning statute.  That statute was enacted in 1978 so that the District could qualify for federal funding.  Under a then-applicable federal statute, certificate of need decisions had to be appealable to an independent administrative agency.  National Health Planning and Resources Development Act of 1974, Pub. L. No. 93-641, § 13 (A), 88 Stat. 2225 (1975) (repealed 1986).  To comply with this requirement, the Council designated OAH's predecessor, the Board of Appeals and Review, to review SHPDA's decisions (though notably, it said nothing about the Board's standard of review or authority to hear new evidence).  *See* District of Columbia Certificate of Need Act, D.C. Law 2-43, § 10 (1978) (repealed 1980); Comm. on Human Resources & Aging, D.C. Council, Report on Bill 2-54 at 1, 10 (July 7, 1977).  Although the 1978 health services planning statute was subsequently repealed (and two successor statutes were also repealed), the Council, without discussion, retained the administrative appeal component when it passed the iteration of the District's health services planning statute that is in force today.  *See* Health Services Planning Program Re-Establishment Act of 1996, D.C. Law 11-191, § 14 (1996) (amended 1997, 2005) (current version at D.C. Code §§ 44-401 to -421); Comm. on Human Services, D.C. Council, Report on Bill 11-86 at 8 (May 2, 1996).

[and] the experience[] and specialized competence of the SHPDA." D.C. Code § 44-413 (b). We consider only whether OAH's authorization to hear any additional evidence permitted it to do what it did here, i.e., conduct an evidentiary do over. [39]

If OAH can hear any evidence without limitation, even evidence on the merits of the certificate of need decision that was previously available and could have been presented to SHPDA, it effectively becomes a co-equal decision-maker regarding the issuance of certificates of need. But we see no support for that conception of OAH's role. As detailed above, SHPDA is the expert body regarding state health planning; OAH is not. Moreover, except for the "any additional evidence" provision in D.C. Code 44-413(b), the statutory scheme puts OAH in a reviewing posture, and one that is deferential at that. Relatedly, there is no indication in the legislative history that the "additional evidence" provision was

[39] We leave for another day questions such as whether the state health planning statute permits OAH to (1) hear new evidence, not reasonably available when SHPDA ruled, to determine whether the case should be remanded to SHPDA for further consideration rather than decided outright on the record before SHPDA; (2) consider whether undisputed new evidence, not previously available, would compel any reasonable decision-maker to rule for one party; or (3) take new evidence if SHPDA either unreasonably refused to hear that evidence or if SHPDA's regulations do not permit presentation of that evidence.

intended to transform OAH into a first-line fact-finder or co-equal decision-maker with SHPDA.[40]

Thus we conclude that OAH may not effectively retry a certificate of need decision by hearing evidence that could have been but was not submitted to SHPDA. At least where there is no new or newly available evidence on the merits of SHPDA's decision, OAH's review must resemble this court's standard of review under the APA. *See* D.C. Code § 2-510 (a)(3)(A), (E). Accordingly, OAH should "defer to [a SHPDA] decision so long as it flows rationally from the facts and is supported by substantial evidence." *See Durant v. District of Columbia Zoning Comm'n*, No. 15-AA-979, 2016 WL 3031384, at *2 (D.C. May 26, 2016) (quoting *Levy v. District of Columbia Rental Hous. Comm'n*, 126 A.3d 684, 688 (D.C. 2015)); *see also* D.C. Code § 2-510 (a)(3)(E). OAH should also assess whether SHPDA's decision is "[a]rbitrary, capricious, an abuse of discretion, or

---

[40] These provisions first appeared, without any explanation, in the 1980 health services planning statute—the second iteration of this law. *See* Comm. on Human Services, D.C. Council, Report on Bill 3-289 at 14 (May 29, 1980); *compare* D.C. Law 2-43, *supra* note 38, § 10, *with* District of Columbia Certificate of Need Act of 1980, D.C. Law 3-99 § 10 (b) (1980) (repealed 1992). Although the 1980 statute was later repealed, Health Services Planning Program Act of 1992, D.C. Law 9-197, § 22 (1992) (repealing D.C. Law 3-99, *supra* note 38), this language reappeared, again without explanation, when the law was reinstated, *see* D.C. Law 11-191, *supra* note 38, § 14.

otherwise not in accordance with law." *See* D.C. Code § 2-510 (a)(3)(A). This limitation on OAH's ability to take additional evidence preserves SHPDA's decision-making authority within the area of its expertise. *See Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (explaining that "limiting review to the record actually before the agency . . . guard[s] against . . . using new evidence to convert the [deferential] 'arbitrary and capricious' standard into effectively de novo review"). And this limitation appears to align with the reviewing authority exercised by the Board of Appeals and Review, OAH's predecessor, when it reviewed SHPDA decision-making.[41] *See Bio-Medical*, 829 A.2d at 213, 216 (noting that the Board of Appeals and Review affirmed SHPDA's decision because it "was supported by the evidence and was not materially inconsistent" with the draft Health Systems Plan).

### B. OAH's Order to Issue a Certificate of Need to DHP

Having clarified OAH's standard of review of SHPDA decisions as well as

---

[41] This conclusion is not in tension with D.C. Code § 44-413 (c), which DHP incorrectly reads as a directive to OAH to hold a full-blown evidentiary hearing in every administrative appeal of a SHPDA decision. Section 44-413 (c) provides only that when OAH holds a contested case hearing, it must follow the procedures set forth in D.C. Code § 2-509; it does not speak to OAH's authority to conduct such hearings.

its evidence-gathering authority, we turn to the review it conducted in this case. Under the standards set forth above, it is clear that OAH exceeded its statutory authority. The OAH ALJ did not limit herself to the administrative record developed before SHPDA. Instead, her review was in effect de novo; it incorporated evidence from DHP—some new, some repackaged, but all previously available—regarding the merits of its application. And rather than deferring to SHPDA's decision, the OAH ALJ made her own determination that DHP had "presented substantial evidence of need" for a new transplant facility and thus should receive a certificate of need. Because OAH exceeded its reviewing authority, we must reverse.

## IV. Conclusion

For the foregoing reasons, we reverse the OAH ALJ's order directing SHPDA to issue DHP a certificate of need. Ordinarily, if an agency fails to employ the proper standard of review, as OAH did in this case, we remand to the agency to conduct its review anew under the correct standard. *See, e.g.*, *E. Capitol Exxon*, 64 A.3d at 882. But recognizing that a substantial amount of time has passed since SHPDA, at the direction of OAH, issued the certificate of need, and

with the understanding that DHP is currently operating its transplant facility, we remand to OAH with instructions to remand this matter to SHPDA to determine whether to modify or retract the certificate of need that it issued to DHP. *See, e.g.*, *District of Columbia Dep't of Emp't Servs. v. Smallwood*, 26 A.3d 711, 716 (D.C. 2011) (remanding to OAH with instruction to remand to expert agency for further proceedings).

*So ordered.*